Mitchel H. Kider
*pro hac vice*
Timothy P. Ofak
*pro hac vice*
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036-1609
Tel: (202) 628-2000
kider@thewbkfirm.com
ofak@thewbkfirm.com

Sharon A. Bauman
NV Bar No. 8274
PLANTE HUGUENIN LEBOVIC KAHN LLP
8345 West Sunset Road, Suite 160
Las Vegas, NV 89113
Tel: (702) 470-0220
sbauman@phlklaw.com

*Attorneys for Defendants D.R. Horton, Inc. and DHI Mortgage Company, Ltd.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| KIM ROBINSON, BRADLEY SKOUGARD, DESIREE SKOUGARD, TAMMY SANTORII, ARTHUR WHITNEY, MICHELLE HINDS, BRADLEY HINDS, RUSTY STEFFNER, AMIE STEFFNER, and GAGE RADTKE, on behalf of themselves, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>D.R. HORTON, INC. and DHI MORTGAGE COMPANY, LTD.,<br><br>Defendants. | Case No: 2:25-cv-02394-RFB-NJK<br><br>**DEFENDANT D.R. HORTON INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY THE CASE AS TO DEFENDANT D.R. HORTON**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Pursuant to binding arbitration agreements between it and each Plaintiff, Defendant D.R. Horton Inc. ("D.R. Horton") moves to compel arbitration as to all claims asserted against it in this case.[1] The claims at issue are covered by broad arbitration clauses in which Plaintiffs and D.R. Horton agreed to arbitrate disputes arising in connection with the homes that Plaintiffs purchased from D.R. Horton. The Court should also stay the case with respect to any further participation by D.R. Horton while the arbitration is pending.

## FACTUAL BACKGROUND

Plaintiffs purchased newly constructed homes from D.R. Horton using mortgage loans from DHI Mortgage. Plaintiffs allege in relevant part that D.R. Horton's sales representatives made vague assurances to them that their estimated monthly mortgage payments for the properties would fit within their budgets. Notwithstanding these alleged assurances, Plaintiffs claim that D.R. Horton sought to understate their estimated monthly payment amounts in order to sell them homes that they otherwise might not have purchased. The suit includes claims against D.R. Horton under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Nevada and Florida state consumer protection statutes, and for negligence under Nevada and Florida law.

The home purchase agreements between Plaintiffs and D.R. Horton include broad arbitration provisions requiring the parties to arbitrate any dispute relating to the properties or their agreements to purchase the properties. For Plaintiffs who purchased properties in Nevada (Robinson; Skougard; Santorii-Whitney; Hinds), the home purchase agreement addresses the obligation to arbitrate in several places. The cover page of the agreement includes a box with the following text in bold and uppercase: "**THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION. YOU SHOULD CONSULT LEGAL COUNSEL WITH ANY QUESTIONS ABOUT ANY OF THE PROVISIONS OF THIS AGREEMENT.**" Exs. A–D at 1. The agreement further provides (with bold, uppercase, and underlining as in the original):

---

[1] To be clear, D.R. Horton is the sole moving party for this motion. Defendant DHI Mortgage Company Ltd. ("DHI Mortgage") is not seeking to compel arbitration as to the claims asserted against DHI Mortgage.

**11. <u>ARBITRATION OF DISPUTES.</u>** The parties want to promptly and efficiently resolve any controversy, claim or dispute of any kind or nature between them arising between Buyer and Seller arising before or after the Closing concerning, relating to, or arising out of, this Purchase Agreement or the Property ("Dispute"). Any dispute which is not resolved under the Limited Warranty, shall be resolved in accordance with the procedures set forth below.

**11.1 <u>Arbitration.</u>**

11.1.1 **<u>Agreement to Arbitrate.</u>** Buyer and Seller agree to resolve all Disputes exclusively through binding arbitration in the county in which the Property is located. This arbitration provision shall apply to Disputes of any kind or nature regardless of when the Dispute first arose, or the nature of the relief sought.

11.1.2 **<u>Waiver of Trial by Judge or Jury.</u>** By agreeing to resolve all Disputes through binding arbitration, Buyer and Seller each give up the right to have their respective claims and defenses decided by a judge or a jury. Instead all claims and defenses will be decided by the arbitrator.

…

11.1.4 **<u>Federal Arbitration Act.</u>** Buyer and Seller acknowledge that, among other reasons, because many of the materials and products incorporated into the home are manufactured in other states, this Purchase Agreement evidences a transaction involving interstate commerce and the Federal Arbitration Act (9 U.S.C. § 1, et seq.) now in effect and as it may be hereafter amended will govern the interpretation and enforcement of the arbitration provisions of this Purchase Agreement.

…

11.1.6 **<u>Agreement to Arbitrate.</u> BY INITIALING IN THE SPACE BELOW, BUYER AND SELLER AGREE TO HAVE ALL DISPUTES DECIDED BY NEUTRAL ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT, AND BUYER AND SELLER ARE GIVING UP ANY RIGHTS BUYER AND SELLER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW BUYER AND SELLER ARE GIVING UP THEIR RESPECTIVE JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THIS PURCHASE AGREEMENT AND/OR THE AAA RULES. IF BUYER OR SELLER REFUSES TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, BUYER OR SELLER MAY BE COMPELLED TO ARBITRATE UNDER THE FEDERAL ARBITRATION ACT OR NEVADA LAW.**

Exs. A–D at 11–12. This clause is followed by the statement "**I/we have read and understand the foregoing and agree to submit disputes to binding arbitration**" and is initialed by the seller, buyer, and co-buyer to show their specific assent to the arbitration provision. Exs. A–D at 12. The buyer and co-buyer initial this clause separate from and in addition to initialing the bottom of each page of the agreement and signing on the final page of the agreement. *Id.*

For Plaintiffs who purchased properties in Florida (Steffner; Radtke), the arbitration agreement states (with bold and uppercase as in the original):

> **MANDATORY BINDING ARBITRATION.** PURCHASER AND SELLER SHALL SUBMIT TO BINDING ARBITRATION IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA ANY AND ALL DISPUTES WHICH MAY ARISE BETWEEN THEM REGARDING THIS AGREEMENT AND/OR THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY DISPUTES REGARDING: (A) SELLER'S CONSTRUCTION AND DELIVERY OF THE HOME; (B) SELLER'S PERFORMANCE UNDER ANY PUNCH LIST OR INSPECTION AGREEMENT; AND (C) SELLER'S WARRANTY PURSUANT TO SECTION 14 ABOVE. THE ARBITRATION SHALL TAKE PLACE IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. THE PROCEEDING SHALL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND TO THE EXTENT POSSIBLE, UNDER RULES WHICH PROVIDE FOR AN EXPEDITED HEARING. THE FILING FEE FOR THE ARBITRATION SHALL BE PAID BY THE PARTY FILING THE ARBITRATION DEMAND. THE ARBITRATION SHALL BE BINDING AND FINAL, AND EITHER PARTY SHALL HAVE THE RIGHT TO SEEK JUDICIAL ENFORCEMENT OF THE ARBITRATION AWARD.... ALL ARBITRATION HEARINGS WILL BE COMMENCED WITHIN NINETY (90) DAYS OF THE DEMAND FOR ARBITRATION.... IN ORDER FOR THIS SUBSECTION TO BE A PART OF THIS AGREEMENT, IT MUST BE INITIALED BY SELLER AND PURCHASER.

Exs. E–F at 6–7. This clause is initialed by the seller, buyer, and co-buyer to show their specific assent to the arbitration provision. Exs. E–F at 7. The buyer and co-buyer initial this clause separate from and in addition to initialing the bottom of each page of the agreement and signing on the final page of the agreement. *Id.*

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The same applies under Neveda and Florida state law. *See* Nev.

Rev. Stat. § 38.219(1); Fla. Stat. Ann. § 682.02(1). "The FAA establishes a federal policy favoring arbitration, requiring that courts rigorously enforce agreements to arbitrate and provides that if a contract contains an arbitration clause, there is a presumption of arbitrability." *Broadnax v. Uber Techs., Inc.*, 790 F. Supp. 3d 996, 1001 (D. Nev. 2025) (brackets and quotations omitted). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quotations omitted).

Courts must compel arbitration after "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quotations omitted). Courts must also "resolv[e] ambiguities as to the scope of arbitration in favor of arbitration." *Jenkins v. TTEC Servs. Corp.*, 830 F. Supp. 3d 1060, 1066 (D. Nev. 2026) (quotations omitted).

## **ANALYSIS**

*D.R. Horton Is Timely Moving to Compel Arbitration*

D.R. Horton's motion to compel arbitration is timely because the case remains at the pleading stage. No discovery has occurred. Dkt. 50. Nor has the Court ruled upon the pending motion to dismiss. *See, e.g., Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 921 (N.D. Cal. 2024) ("No discovery has been exchanged, and the Court has not ruled on the pending motion to dismiss. Thus, the Court finds this case more like those where courts declined to find waiver."); *Wheeler v. LG Elecs. USA, Inc.*, No. 22-cv-459, 2024 WL 51353, at *7 (E.D. Cal. Jan. 4, 2024) (determining that no waiver existed when a motion to dismiss was pending, because of "the absence of any discovery being conducted, an answer being filed, or meaningful case management proceedings being conducted"); *Ensambles Hyson, S.A. de C.V. v. Sanchez*, 718 F. Supp. 3d 1258, 1272–73 (S.D. Cal. 2024) (determining that no waiver existed even after three-year delay, during which defendant filed motion disputing the court's jurisdiction).

*Each Plaintiff Has a Valid Agreement to Arbitrate with D.R. Horton*

All Plaintiffs are required to arbitrate their claims against D.R. Horton under the arbitration provisions in their home purchase agreements. The contracts are valid and binding—each Plaintiff acknowledges in the FAC that they entered into a home purchase agreement with D.R. Horton. FAC ¶¶ 108, 134, 158, 193, 221, 245. None of the Plaintiffs alleges that the home purchase agreement—or any clause within the agreement—is in any way invalid or unenforceable. Nor does any Plaintiff seek relief to invalidate or unwind the home purchase.

Each Plaintiff expressly acknowledged and accepted the arbitration provision in the home purchase agreement separate from, and in addition to, the broader agreement itself. For Plaintiffs who purchased properties in Nevada, the arbitration clause is followed by the statement "**I/we have read and understand the foregoing and agree to submit disputes to binding arbitration**." In turn, each Plaintiff, along with the seller, expressly initialed below the clause to affirm their intent to submit disputes related to the properties to binding arbitration.

Nevada state law requires that an agreement to arbitrate "include specific authorization for the provision which indicates that the person has affirmatively agreed to the provision." Nev. Rev. Stat. § 597.995(1). Here, the Nevada home purchase agreements expressly include the arbitration provisions as their own section, which required Plaintiffs to initial below it to show consent to the arbitration provision separate from, and in addition to, their signature at the end showing assent to the agreement as a whole. *See Larson v. D. Westwood, Inc.*, No. 15-cv-1372, 2016 WL 5508825, at *2 (D. Nev. Sep. 27, 2016) (concluding that parties showed specific authorization to arbitrate when "[t]he arbitration provision [was] set apart from the other provisions by boldface capital letters, and required a separate initialing"). Indeed, the Nevada Supreme Court has held that arbitration clauses are valid even without such efforts to distinguish them from the rest of the text. *See U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 41 (Nev. 2018) (rejecting challenge to "arbitration provision [that was] in the same size font as the other provisions in the CC&Rs").

Likewise, for Plaintiffs who purchased properties in Florida, the arbitration clause states: "IN ORDER FOR THIS SUBSECTION TO BE A PART OF THIS AGREEMENT, IT MUST BE INITIALED BY SELLER AND PURCHASER." In turn, each Plaintiff, along with the seller,

expressly initialed below the clause to affirm their intent to be bound by the arbitration clause. Florida law provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." Fla. Stat. Ann. § 682.02.

Here, no legal or equitable basis for revocation of the contract exists. The Florida home purchase agreements expressly include the arbitration provisions as their own section, which required Plaintiffs to initial below it to show consent to the arbitration provision separate from, and in addition to, their signature at the end showing assent to the agreement as a whole. The FAC acknowledges that Plaintiffs entered into the home purchase agreements with D.R. Horton and does not advance any claim challenging the validity or enforceability of these contracts. *See, e.g.*, *Tampa HCP, LLC v. Bachor*, 72 So. 3d 323, 328 (Fla. Dist. Ct. App. 2011) (rejecting challenge to arbitration agreement when the plaintiff "had a meaningful opportunity to review the arbitration agreement, to obtain guidance, and to accept or reject the terms of the arbitration agreement").

In each case, Plaintiffs initialed their acceptance of the arbitration clause separate from, and in addition to, initialing each page of the agreement and signing the agreement on the final page. Based on the plain language of the agreements, the bold and/or uppercase lettering used in the arbitration clauses to stand out from the rest of the agreement, and Plaintiffs' express acceptance of the clauses by independently initialing them to show assent, each Plaintiff entered into a valid agreement to arbitrate.

*The Arbitration Clauses Are Broad and Encompass the Claims in This Case*

The arbitration provisions at issue are broadly written to encompass any dispute relating to the purchase agreements and the homes that Plaintiffs purchased from D.R. Horton. For Nevada Plaintiffs, this scope broadly includes "any controversy, claim or dispute of any kind or nature between them arising between Buyer and Seller arising before or after the Closing concerning, relating to, or arising out of, this Purchase Agreement or the Property." Thus, the broad language of the arbitration provisions in Plaintiffs' home purchase agreements plainly applies to their claims in this case. *See SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798–99 (Nev. 2022)

("Under a broad arbitration provision—i.e., one that encompasses all disputes related to or arising out of an agreement—a presumption of arbitrability applies and only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." (Quotations omitted).).

Likewise, for Florida Plaintiffs, the arbitration provision applies to "ANY AND ALL DISPUTES WHICH MAY ARISE BETWEEN THEM REGARDING THIS AGREEMENT AND/OR THE PROPERTY." Under Florida law, "[t]he intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). Here, the arbitration provision in D.R. Horton's Florida home purchase agreement has "language and application broad in scope" by virtue of the clause requiring arbitration for claims and controversies "regarding" the contract *or* the property. *Id.* at 593-95. This broad arbitration provision—as opposed to a more limited provision requiring arbitration only for claims "arising out of" the contract—covers contract claims as well as torts and other disputes "having a 'significant relationship' to the contract." *Id.* at 593–94 (quoting *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 637–38 (Fla. 1999)).

Because Plaintiffs claim that D.R. Horton's assurances regarding their home purchases caused them to enter into their home purchase agreements, their claims maintain a significant relationship to their home purchase agreements such that they are subject to the arbitration provisions. *See id.* at 595 (holding that fraud claim was subject to arbitration because "the reliance element of the claim emanate[d] from the transaction from which the contract arose, and the damages element of the claim [arose] from the execution and existence of the contract itself"); *Vanacore Constr., Inc. v. Osborn*, 260 So. 3d 527, 531 (Fla. Dist. Ct. App. 2018) (compelling arbitration of negligence, Florida Deceptive and Unfair Trade Practices Act, and other statutory claims because they were "directly related to the subject of the contract—the construction of Homeowners' homes").

In all the cases discussed above, the applicability of the arbitration clause turned on whether a claim was related to the property or the agreement to purchase the property. Here, it is plain from the face of the FAC that Plaintiffs' claims relate to both. Plaintiffs' claims against D.R. Horton boil down to allegations that D.R. Horton employees misled them about what they would

ultimately need to pay for their properties. Plaintiffs likewise assert that D.R. Horton allegedly made these assurances to convince Plaintiffs to purchase properties that they otherwise would not have. These allegations establish the appropriate nexus between the properties and Plaintiffs' underlying agreements to purchase them. Beyond this facially apparent connection, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

## CONCLUSION

For the foregoing reasons, all of Plaintiffs' claims against D.R. Horton should be referred to arbitration, and the case against D.R. Horton should be stayed while the arbitration is pending.

Dated: August 28, 2026

*/s/ Timothy P. Ofak*
Mitchel H. Kider
*pro hac vice*
Timothy P. Ofak
*pro hac vice*
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036-1609
Tel: (202) 628-2000
kider@thewbkfirm.com
ofak@thewbkfirm.com

Sharon A. Bauman
NV Bar No. 8274
PLANTE HUGUENIN LEBOVIC KAHN LLP
8345 West Sunset Road, Suite 160
Las Vegas, NV 89113
Tel: (702) 470-0220
sbauman@phlklaw.com

*Attorneys for Defendants D.R. Horton, Inc. and DHI Mortgage Company, Ltd.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on August 28, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Timothy P. Ofak*

Timothy P. Ofak