**LEGAL AID CENTER OF SOUTHERN NEVADA**
Elizabeth Mikesell, Esq. (NV Bar No. 8034)
*EMikesell@lacsn.org*
Peter Aldous, Esq. (NV Bar No. 11346)
*paldous@lacsn.org*
725 E. Charleston Blvd.
Las Vegas, NV 89104
Tel.: (702) 386-1533

**CLARKSON LAW FIRM, P.C.**
Kristen G. Simplicio (*pro hac vice*)
*ksimplicio@clarksonlawfirm.com*
1050 Connecticut Ave. NW, Suite 500
Washington, DC 20036
Tel.: (202) 998-2299
Fax: (213) 788-4070

**CLARKSON LAW FIRM, P.C.**
Roke Iko (*pro hac vice*)
*riko@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

**NATIONAL CONSUMER LAW CENTER**
Jennifer Spieler Wagner (*pro hac vice*)
*jwagner@nclc.org*
Shennan Kavanagh (*pro hac vice*)
*skavanagh@nclc.org*
7 Winthrop Square, 4th Floor
Boston, MA 02110
Tel.: 617-542-8010

**VARNELL AND WARWICK PA**
Jeffrey L. Newsome II (*pro hac vice)*
*jnewsome@vandlwlaw.com*
Janet R. Varnell (*pro hac vice)*
*jvarnell@vandlwlaw.com*
Brian Warwick (*pro hac vice)*
*bwarwick@vandwlaw.com*
400 N. Ashley Drive, Suite 1900
Tampa, FL 33602
Tel.: 352-753-8600
Fax: 352-504-3301

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KIM ROBINSON, BRADLEY SKOUGARD, DESIREE SKOUGARD, TAMMY SANTORII, ARTHUR WHITNEY, MICHELLE HINDS, and BRADLEY HINDS, on behalf of themselves, and on behalf of all others similarly situated,

Plaintiff,

v.

D.R. HORTON, INC., and DHI MORTGAGE COMPANY, LTD.,

Defendants.

Case No. 2:25-cv-02394-RFB-NJK

*Assigned to District Judge Richard F. Boulware, II and Magistrate Judge Nancy J. Koppe*

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT D.R. HORTON, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY THE CASE (ECF 51)**

# TABLE OF CONTENTS

**Page No.**


I. PRELIMINARY STATEMENT ....................1

II. RELEVANT FACTS AND PROCEDURAL BACKGROUND ....................2

A. Plaintiffs' claims concern a conspiracy to deceive budget-sensitive homebuyers as to the monthly cost of the mortgage payments. ....................2

B. D.R. Horton chose to litigate the merits of the case for nine months. ....................3

III. ARGUMENT ....................5

A. D.R. Horton waived any right it may have had to compel arbitration. ....................5

B. As a matter of statutory interpretation, Plaintiffs' claims against D.R. Horton do not arise out of the Purchase Agreements, and the Court therefore cannot compel arbitration under the FAA. ....................9

1. Federal courts may only compel arbitration under the FAA if the underlying claims "arise out of" the contract containing the arbitration clause. ....................10

2. Plaintiffs' claims do not "arise out of" the Purchase Agreements under federal common law. ....................11

C. As a matter of contractual interpretation, Plaintiffs' claims against D.R. Horton do not fall with the scope of issues covered by the Arbitration provisions in the Purchase Agreements, and the Court therefore cannot compel arbitration under Florida and Nevada law ....................14

1. The Florida Purchase Agreements call for the arbitration of claims relating to construction or warranties and do not reach the Florida Plaintiffs' claims. ....................14

2. The Nevada Purchase Agreements call for the arbitration of claims relating to construction or warranties and do not reach the Nevada Plaintiffs' claims. ....................15

D. The Truth-in-Lending Act prohibits mandatory arbitration of claims arising out of a mortgage-lending transaction. ....................16

IV. CONCLUSION ....................18

# TABLE OF AUTHORITIES

**Cases** **Page No.**


*Banq, Inc. v. Purcell*, No. 23-15229, 2024 WL 4164126 (9th Cir. Sept. 12, 2024) ....8

*Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198 (1956) ....10

*Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204 (11th Cir. 2021) ....10, 11, 12, 13

*Clark Cnty. Pub. Emps. Ass'n v. Pearson,* 106 Nev. 587, 798 P.2d 136 (1990) ....15, 18

*Davitashvili v. Grubhub Inc.*, 131 F.4th 109 (2d Cir. 2025) ....10, 12, 13

*Earn Guild PTE Ltd. v. Crowdcreate, LLC*, No. 2:23-09277 ADS, 2024 WL 5365055 (C.D. Cal. Dec. 16, 2024) ....9

*Ensambles Hyson, S.A. de C.V. v. Sanchez*, 718 F. Supp. 3d 1258, 1272 (S.D. Cal. 2024) ....7

*FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837 (N.D. Cal. 2023) ....8

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024) ....7, 8

*Gile v. Dolgen Cal., LLC*, No. 21-56311, 2022 WL 17248087 (9th Cir. Nov. 28, 2022) ....9

*Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023) ....5

*Houghton v. Polychain Alchemy, LLC*, No. 24-7243, 2025 WL 2965204 (9th Cir. Oct. 21, 2025) ....6

*Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587 (Fla. 2013) ....14, 15

*Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023) ....11

*Lyons v. PNC Bank, N.A.* 26 F.4th 180 (4th Cir. 2022) ....17

*Lyons v. PNC Bank, N.A.*,
No. 1:20-CV-02234-SAG,
2021 WL 50918 (D. Md. Jan. 6, 2021) ........ 17

*Maddox v. Adler*,
No. 2:23-CV-00535-RFB-NJK,
2024 WL 4349481 (D. Nev. Sept. 29, 2024)
*appeal dismissed*, No. 24-6153,
2025 WL 1037520 (9th Cir. Jan. 31, 2025) ........ 16

*Messina v. North Cent. Distrib., Inc.*,
821 F.3d 1047 (8th Cir. 2016) ........ 8

*Mikohn Gaming Corp. v. McCrea*,
120 Nev. 248, 89 P.3d 36 (2004) ........ 16

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019) ........ 10, 11, 13

*Newirth v. Aegis Senior Cmtys., LLC*,
931 F.3d 935 (9th Cir. 2019) ........ 8

*Petersen v. Boeing Co.*,
No. 11-18075,
2015 WL 12534322 (D. Ariz. Apr. 7, 2015) ........ 8

*Revitch v. DIRECTV, LLC,*
977 F.3d 713 (9th Cir. 2020) ........ 10, 12

*Rittman v. Amazon.com, Inc.*,
971 F.3d 904 (9th Cir. 2020) ........ 10

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) ........ 8

*Seifert v. U.S. Home Corp.*,
750 So. 2d 633 (Fla. 1999) ........ 14, 15

*Slaten v. Experian Info. Sols., Inc.*,
No. CV 21-09045-MWF (Ex),
2023 WL 6890757 (C.D. Cal. Sept. 6, 2023) ........ 8

*State ex rel. Masto v. Second Jud. Dist. Court ex rel. Cnty, of Washoe*,
125 Nev. 37, 199 P.3d 828 (2009) ........ 16

*Tao v. Murphy*,
812 F. Supp. 3d 1117 (D. Nev. 2025) ........ 10, 11, 12, 13

*Thomas-Lawson v. Carrington Mortg. Servs., LLC*,
No. 2:20-CV-07301-ODW (EX),
2021 WL 1253578 (C.D. Cal. Apr. 5, 2021) ........ 17

*Truck Ins. Exch. v. Palmer J. Swanson, Inc.,*
124 Nev. 629, 189 P.3d 656 (2008) ........ 16

*Uhl v. Roblox Corp.*,
No. 25-5057,
2026 WL 2607799 (9th Cir. Sept. 3, 2026) ........ 5, 7, 8

*Webb v. CMH Homes, Inc.*,
No. CV 3:20-0214,
2021 WL 1169899 (S.D.W. Va. Mar. 26, 2021),
*aff'd*, No. 21-1473,
2022 WL 3572768 (4th Cir. Aug. 19, 2022) ........ 17, 18

*Wheeler v. LG Elecs. USA, Inc.*,
No. 1:22-CV-00459-NODJ-BAM,
2024 WL 51353 (E.D. Cal. Jan. 4, 2024) ........ 7, 8

*Wright v. Universal Mar. Serv. Corp.*,
525 U.S. 70 (1998) ........ 12

**<u>Federal Statutes</u>**

9 U.S.C. § 2 ........ 10, 11, 13

Truth in Lending Act ("TILA")
15 U.S.C. § 1639 *et seq* ........ 17, 18

**<u>State Statutes</u>**

NRS 41.600(4) ........ 16

Plaintiffs Kim Robinson, Bradley Skougard, Desiree Skougard, Tammy Santorii, Arthur Whitney, Michelle Hinds, Bradley Hinds (collectively the "Nevada Plaintiffs"), Rusty Steffner, Amie Steffner, and Gage Radtke (collectively the "Florida Plaintiffs") (altogether, the "Plaintiffs"), by and through undersigned counsel, on behalf of themselves, and on behalf of all others similarly situated, submit this Response in Opposition to Defendant, D.R. Horton, Inc.'s ("D.R. Horton") Motion to Compel Arbitration and to Stay the Case (the "Motion") [ECF No. 51] and state:

## I. PRELIMINARY STATEMENT

This case is about a conspiracy between a home mortgage lender, DHI Mortgage Company Ltd. ("DHI Mortgage"), and its affiliated builder, D.R. Horton, to trap first-time homeowners in mortgage loans that they can't afford through a "Monthly Payment Suppression Scheme. *See* First Am. Compl. ("FAC"), ECF No. 29 ¶ 1. To enact this scheme, DHI Mortgage originates loans that misstate the true monthly cost of the mortgage by dramatically, and knowingly, understating the amount of the property taxes that will be included in the loan. *Id.* D.R. Horton's sales agents promise this suppressed monthly mortgage payment to prospective customers, and they work hand-in-glove with DHI Mortgage to ensure that customers receive the DHI Mortgage loans with understated property taxes. *E.g.*, *id.* ¶¶ 4, 44-65, 136-37 (D.R. Horton sales agent confirms mortgage approval and payment to borrower).

Although the crux of the case is the *mortgage* that provides the suppressed monthly payments, D.R. Horton now asserts (for the first time, nearly a year into the case) that the claims against it arise out of "Purchase Agreements" with the Plaintiffs. But these Agreements are merely form contracts that set forth details concerning the acquisition of the home, such as the price to be paid when financing is obtained, and warranties about the construction and quality of the build; they do not contain any term material to any issues in this case. There is a clear reason for this about-face: the mortgage does not contain an arbitration provision, but the Purchase Agreement does. D.R. Horton now invokes this arbitration agreement as a get-out-of-jail-free card, but its argument is doomed to fail.

Despite D.R. Horton's best efforts to argue otherwise, the mortgage loans through DHI to which D.R. Horton steered Plaintiffs and other homebuyers like them are the central, controlling

transactions in this litigation. Indeed, the putative class includes only those people who obtained mortgages through DHI Mortgage—the case necessarily does not include others who purchased D.R. Horton homes without such a mortgage, because they would not have the claims at issue. *See id.* ¶ 265. Defendants concede as much. In their motion to dismiss, Defendants assert repeatedly—and correctly—that the case centers around DHI Mortgage's improper monthly mortgage payment calculations and disclosures. *See, e.g.*, ECF No. 38 at 1-2. Of course, DHI Mortgage was able to accomplish the mortgage payment fraud through D.R. Horton's conspiratorial role in the scheme, including making deceptive misrepresentations about the cost of the monthly payments on the home that led homebuyers to DHI Mortgage. But as D.R. Horton further recognizes in the subject brief, no Plaintiff "seek[s] relief to invalidate or unwind the home purchase," ECF No. 51 at 5, such that the Purchase Agreement is not at issue.

As described below, as a preliminary matter, D.R. Horton has waived its right to make this argument. But even if it had not, its motion fails because Plaintiffs' claims do not arise out of the Purchase Agreements that contain the arbitration clauses, the scope of the arbitration clauses clearly do not encompass this dispute, and the Truth-in-Lending Act prohibits mandatory arbitration of claims arising out of a mortgage-lending transaction, like the claims Plaintiffs have alleged here.

## II. RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. Plaintiffs' claims concern a conspiracy to deceive budget-sensitive homebuyers as to the monthly cost of the mortgage payments.

On December 3, 2025, Plaintiffs[1] filed their complaint against Defendants. Plaintiffs alleged that Defendants engage in a deceptive bait and switch scheme in which they induce homebuyers into mortgage loans by promising low monthly mortgage payments, despite knowing that the payments would, in fact, sky-rocket shortly after the homebuyers entered the loans. ECF No. 1 ¶¶ 1-7. And the FAC is replete with allegations that the deception turns on the monthly mortgage payments, and not any deception with respect to the price of the home or any other term in the

[1] The Steffner Family and Mr. Radtke were not Plaintiffs in the initial Complaint.

Purchase Agreement.[2] Defendants were able to execute their Monthly Payment Suppression Scheme through a conspiracy to include an inaccurate, suppressed figure for property taxes in the mortgage's escrow account, thereby suppressing the total disclosed monthly mortgage payments for the homes. D.R. Horton participated by steering homebuyers to DHI Mortgage to obtain the artificially suppressed payment and by engaging with homebuyers and DHI Mortgage throughout the mortgage loan origination process to reaffirm the promised, suppressed payment. ECF No. 1 ¶¶ 61–77.

**B. D.R. Horton chose to litigate the merits of the case for nine months.**

On February 9, 2026, D.R. Horton and DHI Mortgage filed a 26-page motion to dismiss the complaint in its entirety "for failure to state a claim upon which relief can be granted"—*i.e.*, dismissal on the merits. ECF No. 22 at 1. This pleading challenge included twenty-five exhibits, including for each mortgage obtained by the Plaintiffs: (1) "Loan Estimates," ostensibly provided several weeks before closing; (2) "Closing Disclosures," provided at closing; and (3) other assorted disclosures and paperwork (collectively, "Extrinsic Documents"). Each of these documents related to the mortgage loan origination process. Defendants did *not* include or refer to the Purchase Agreements. In the motion, D.R. Horton did not suggest that it intended to move to compel arbitration. ECF No. 22.

On February 23, 2026, all parties—including D.R. Horton—executed a stipulation setting forth a briefing schedule regarding Defendants' anticipated motion to dismiss Plaintiffs' then-

[2] *See, e.g.,* FAC ¶ 1 (alleging that D.R. Horton works with DHI Mortgage to "conceal the monthly cost of purchasing its homes," by "promising them low, affordable monthly payments," when in fact "Defendants create artificially low monthly mortgage payment quotes by deliberately including only a fraction of required property taxes in their payment calculations" as a way to "mislead homebuyers into believing their total monthly housing costs will fit within their monthly budget."); ¶ 3 (pleading that homebuyers "make purchase decisions based on this total monthly payment amount" in mortgage estimates); ¶ 31-42 (elaborating on materiality of "monthly payment affordability and detailing how Defendants construct mortgage documents to avoid detection prior to closing); ¶¶ 43-63 (describing coordinated marketing strategy built around affordable monthly payments); ¶¶64-85 (detailing closing process by which interstate wires are used to conceal true monthly cost and reassure homebuyers as to the budget-friendly monthly cost); ¶¶ 86-89 (explaining how homebuyers learn the truth months or years later when their new mortgage servicer conducts an escrow analysis); ¶¶ 90-98 (setting forth mortgage industry regulations and customs).

forthcoming First Amended Complaint. ECF No. 26 at 2. Again, the stipulation does not mention arbitration. *Id.*

In lieu of opposing the Motion to Dismiss, on March 6, 2026, the Nevada Plaintiffs, now joined by the Florida Plaintiffs, filed the FAC. ECF No. 29. Like the original complaint, the FAC alleged that Defendants engaged in an unfair and deceptive scheme to suppress the true amount of Plaintiffs' monthly payments to induce Plaintiffs into DHI Mortgage loans to purchase D.R. Horton homes. FAC, ECF No. 29, ¶¶ 1-7. And like the original complaint, the FAC explained that each Plaintiff (and each member of the putative class) purchased a home from D.R. Horton and obtained a mortgage for the home from DHI Mortgage. Compl., ECF No. 1, ¶¶ 105, 128, 130, 151, 153, 176, 180, 201; FAC, ECF No. 29, ¶¶ 108, 134, 155, 158, 193, 221, 251, 265.

On the day before Plaintiffs filed the FAC, counsel for all parties attended a videoconference pursuant to Federal Rule of Civil Procedure 26(f) to discuss a joint discovery plan and various case management and scheduling issues. Simplicio Decl. at ¶ 2. Even in this forward-looking case management discussion, D.R. Horton's counsel did not state that their client intended to move to compel arbitration. *Id.* On March 19, D.R. Horton and DHI Mortgage executed another scheduling stipulation with Plaintiffs that said nothing about arbitration, this time agreeing to extend the time for the parties to file a Joint Rule 26(f) Report. ECF No. 30 at 2.

In the parties' April 2, 2026, Joint Rule 26(f) Report, far from signaling its intent to move to compel arbitration, D.R. Horton repeatedly confirmed its intent to continue litigating this action in court, agreeing that that "[t]he Parties seek longer deadlines [for this case] than those contemplated in Local Rule 26-1(b) … in light of the nature of the claims and current case schedule." D.R. Horton also agreed that "discovery will be required before" Defendants file "other threshold motions" such as "class certification" and "summary judgment" motions, and D.R. Horton confirmed that "[i]f discovery proceeds," it would "fil[e] a motion to phase discovery" where "Phase One would last for eight months." Even in the section of the report entitled "Alternative Dispute Resolution," D.R. Horton said nothing about intending to move to compel arbitration of any claims in this action. ECF No. 34 at 2-3, 8-10

On April 17, 2026, D.R. Horton and DHI Mortgage subsequently filed a motion to stay all discovery pending resolution of their then-forthcoming motion to dismiss. ECF No. 36. On May 8, 2026, Defendants filed their second motion to dismiss (this time against the FAC), which once again sought to dismiss Plaintiffs' claims on the merits and was once again accompanied by Extrinsic Documents (now 38). ECF No. 38. As with D.R. Horton's previous filings, neither motion suggested that D.R. Horton intended to move to compel arbitration. After the motion to stay discovery was denied without prejudice to refiling, Defendants filed a renewed Motion to Stay on July 1, 2026, ECF No. 47, again not stating any intent to move to compel arbitration.

On August 28, 2026, almost nine months after Defendants' Motion to Dismiss was filed, Defendant D.R. Horton, Inc. filed the instant Motion. ECF. No. 51. DHI Mortgage did not join in the Motion.

## III. ARGUMENT

The Court should deny D.R. Horton's motion to compel arbitration for four independent reasons: (1) D.R. Horton waived its right to compel arbitration; (2) the dispute falls outside the reach of Section 2 of the Federal Arbitration Act; (3) the dispute falls outside the Arbitration provision's scope of arbitrable issues; and (4) the dispute is non-arbitrable under the Truth in Lending Act. [3]

### A. D.R. Horton waived any right it may have had to compel arbitration.

D.R. Horton has waived the right to compel arbitration, because it knew of the basis for its motion as soon as Plaintiffs filed their Complaint but acted inconsistently with that right by litigating this action in court for nine months. *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). ("[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right.").

***First***, the "knowledge" element—which requires only that the complaint "allege[] the information [the moving party] needed to know that it had the right to compel arbitration"—is satisfied here. *Uhl v. Roblox Corp.*, No. 25-5057, 2026 WL 2607799, at *1 (9th Cir. Sept. 3, 2026).

---

[3] As indicated in the Motion, D.R. Horton agrees that it is appropriate for this Court to determine arbitrability.

D.R. Horton has known of the basis for its motion to compel arbitration—that Plaintiffs bought homes with D.R. Horton—at least since Plaintiffs filed their original Complaint on December 3, 2025. In its Motion to Compel Arbitration, ECF No. 51 ("Motion"), D.R. Horton argues that the relevant Arbitration provisions "encompass any dispute relating to the Purchase Agreements and the homes that Plaintiffs purchased from D.R. Horton." Mot. at 6.

D.R. Horton has known of the Arbitration provisions since this case was filed.[4] In courts around the country, D.R. Horton regularly enforces similar provisions in contracts with other homebuyers,[5] indicating its familiarity with the terms of its agreements with homebuyers. The Complaint plainly puts D.R. Horton on notice that Plaintiffs and the putative class purchased their homes from D.R. Horton. *See* Compl., ECF No. 1, ¶¶ 105, 128, 130, 151, 153, 176, 180, 201; *see also* FAC, ECF No. 29, ¶¶ 108, 134, 155, 158, 193, 221, 251, 265 (similar). And the FAC incidentally refers to the Purchase Agreements in paragraph 69; the Complaint does so in paragraph 65.[6] Nothing more is needed to establish knowledge. *See Houghton v. Polychain Alchemy, LLC*, No. 24-7243, 2025 WL 2965204, at *1 (9th Cir. Oct. 21, 2025) (finding knowledge element satisfied where complaint informed defendant that the plaintiffs purchased tokens on Coinbase and "Coinbase's User Agreement" had an arbitration clause).[7]

---

[4] In fact, D.R. Horton had a two month head start. As it admits, "Plaintiffs' counsel first filed similar claims on behalf of different plaintiffs in the U.S. District Court for the Middle District of Florida." ECF No. 36 at 6 (referencing *Santiago, et al. v. D.R. Horton, Inc.*, et al., No. 6:25-cv-1904, Dkt. 1 (M.D. Fla. Oct. 1, 2025)). Given the similarity of the claims, D.R. Horton was put on notice then. And there too, D.R. Horton did not disclose an intent to move to compel arbitration. Simplicio Decl. ¶ 4.

[5] For example, in a number of cases involving home warranty claims, D.R. Horton has not only initiated motions to compel arbitration compel, but done so promptly after removal to federal court. *See, e.g., Fernandes v. D.R. Horton, Inc.*, 2:24-cv-03928-DCN (D.S.C. 2025) (moving to compel arbitration 1 week after removal); *Mousa v. D.R. Horton, Inc.-Gulf Coast*, No. 6:24-CV-00972 (W.D. La. Mar. 7, 2025) (moving to compel arbitration 1 week after removal); *Quintana v. D.R. Horton, Inc.*, Case No. 24-cv-01127 (W.D. La. Sept. 19, 2024) (moving to compel arbitration 11 days after removal).

[6] The discussion of the Purchase Agreements appear as part of allegations regarding Defendants' practice of grouping multiple documents together into single PDF files that exceed 100 pages, sending texts and emails to create a sense of urgency, all while assuring homebuyers that the mortgage payments will fit within their budget. FAC ¶¶ 68-82.

[7] While the claims here do not actually provide a right to compel arbitration for the reasons set forth throughout the remainder of the brief, *see* §§III.B, C, *infra*, D.R. Horton has had within its knowledge everything concerning its purported belief that it has the right to compel arbitration since December 2025 for the Nevada Plaintiffs and since March 2026 for the Florida Plaintiffs.

***Second***, D.R. Horton's conduct—bringing this Motion only after vigorously litigating this action in court for nearly nine months while never even hinting that it intended to move to compel arbitration—is plainly inconsistent with moving to compel arbitration. *E.g.*, *Uhl*, 2026 WL 2607799, at *1 (noting that the "waiver" inquiry is "holistic"). For instance, D.R. Horton (1) filed two motions to dismiss Plaintiffs' claims in their entirety and on the merits (both motions were lengthy and attached voluminous exhibits); (2) moved to stay all discovery pending resolution of Defendants' then-pending motion to dismiss; (3) signed onto multiple scheduling stipulations, none of which indicated that D.R. Horton planned to move to compel arbitration; and (4) attended the parties' Rule 26(f) conference and contributed to and executed a Joint Rule 26(f) Report where D.R. Horton was not only silent about moving to compel arbitration (even in the "Alternative Dispute Resolution" section) but made several representations about its plans to litigate this action ***in court***, including potentially filing motions for class certification and summary judgment. ECF No. 34 at 2-3, 8-10; Simplicio Decl. ¶ 2-3. Not once before filing its Motion did D.R. Horton state to Plaintiffs or in any filing that it intended to enforce any purported arbitration agreement. *Id.* ¶ 3.

D.R. Horton's cases do not compel a different conclusion. Rather, it depends heavily on cases where the parties first moved to dismiss for lack of jurisdiction, rather than moving to dismiss under Rule 12(b)(6) for the failure to state a claim, as the Defendants here did. Because a jurisdictional motion is not one that calls on the Court to resolve merits, the Ninth Circuit distinguished it from a Rule 12(b)(6) motion for purposes of determining whether a party waived their rights to compel arbitration as follows:

> [A] motion to dismiss for lack of jurisdiction, unlike a motion to dismiss on the merits, does not choose a court over an arbitrator for a decision that resolves the dispute. Instead, it asks the court to decide an issue that an arbitrator cannot possibly resolve: whether the court has power over the parties—and therefore power to compel arbitration—in the first place . . . We have repeatedly held that [s]eeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum.

*Uhl*, 2026 WL 2607799, at *2 (citations and internal quotation marks omitted). This distinction makes all the difference here. For example, in *Ensambles Hyson, S.A. de C.V. v. Sanchez*, cited by D.R. Horton, the moving party waited to move to compel arbitration until after the Court denied a

***jurisdictional*** motion to dismiss. 718 F. Supp. 3d 1258, 1272 (S.D. Cal. 2024). And in *Ghazizadeh v. Coursera, Inc*. and *Wheeler v. LG Elecs. USA, Inc.*, also cited by D.R. Horton, the court declined to find waiver because the defendant's Rule 12 motion included both procedural and substantive challenges to the complaint that Federal Rule of Civil Procedure 12(g) required the defendant to bring together in one motion. *See Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 921 (N.D. Cal. 2024) (Article III standing); *Wheeler v. LG Elecs. USA, Inc.*, No. 1:22-CV-00459-NODJ-BAM, 2024 WL 51353, at *7 (E.D. Cal. Jan. 4, 2024) (venue).

Here, by contrast, D.R. Horton filed a Rule 12(b)(6) motion to dismiss that raised no jurisdictional challenges. Further, the motion to dismiss not only asked the Court to resolve merits issues but also depended heavily on Extrinsic Documents that were not incorporated by reference in the FAC (and do not include the Purchase Agreements). See ECF No. 44 at 4–5 (in Plaintiffs' opposition, discussing the failure to satisfy standard). D.R. Horton's efforts to have the Court resolve the case on non-jurisdictional grounds that go beyond even the four-corners of the FAC, set it apart from the cases on which it relies. And courts have found that delay of a length similar to D.R. Horton's nine-month delay in bringing a motion to compel arbitration constitutes waiver when combined with other actions that are inconsistent with seeking to arbitrate. *See, e.g., FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837, 843 (N.D. Cal. 2023) (eight month delay); *Banq, Inc. v. Purcell*, No. 23-15229, 2024 WL 4164126, at *2 (9th Cir. Sept. 12, 2024) (five months); *Messina v. North Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (eight months).[8]

Taken together, D.R. Horton has waived any ability to compel arbitration through its conduct. *See*, *e.g.*, *Uhl*, 2026 WL 2607799, at *2 ("[T]he paradigmatic act that is inconsistent with a right to arbitrate is 'when defendants move for dismissal with prejudice on a key merits issue.'") (quoting *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 942 (9th Cir. 2019)); *FBC Mortg.*, 699 F. Supp. 3d at 843 (defendants waived right to arbitrate where they "waited eight months <u>and</u>

---

[8] In the analogous context of a motion to dismiss for *forum non conveniens*, courts similarly find that delay in seeking to enforce the forum-selection clause counsels against granting the motion. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (An arbitration clause is "just a specialized kind of forum-selection clause"); *Petersen v. Boeing Co.*, No. 11-18075, 2015 WL 12534322, at*4 (D. Ariz. Apr. 7, 2015) (delay is a factor in determining whether to enforce a forum selection clause).

affirmatively 'engaged in other litigation procedure' to try to dismiss two of FBC's claims on the merits"); *Slaten v. Experian Info. Sols., Inc.*, No. CV 21-09045-MWF (Ex), 2023 WL 6890757, at *5 (C.D. Cal. Sept. 6, 2023) (finding waiver where, despite not "litigat[ing] the merits of [the] case," defendant "made representations to the Court suggesting that it would not seek to compel arbitration," including by stating in the "Joint Rule 26(f) Report … that it 'anticipates it may file a motion for summary judgment'" and not otherwise "rais[ing] the potential of arbitration"); *Earn Guild PTE Ltd. v. Crowdcreate, LLC*, No. 2:23-09277 ADS, 2024 WL 5365055, at *3 (C.D. Cal. Dec. 16, 2024) (finding waiver where defendant noted in Rule 26(f) reports that it intended to file dispositive motions but "did not[] state an intent to move to" compel arbitration); *Gile v. Dolgen Cal., LLC*, No. 21-56311, 2022 WL 17248087, at *1 (9th Cir. Nov. 28, 2022) (finding waiver where, among other things, the moving party "signed onto a joint Rule 26(f) report before filing its motion to compel").

### B. As a matter of statutory interpretation, Plaintiffs' claims against D.R. Horton do not arise out of the Purchase Agreements, and the Court therefore cannot compel arbitration under the FAA.

In addition to waiving its right to compel arbitration, D.R. Horton's motion fails because Plaintiffs' claims do not arise out of the underlying Purchase Agreements with D.R. Horton. As indicated by the Complaint, the FAC, and the motions to dismiss, the Purchase Agreements have little bearing on this case. They first appeared in this case as attachments to the Motion. They identify the address of the properties, state that the buyer is the intended occupant, list the purchase price of the home, contain factual information regarding the earnest money and down payment, discuss the condition of the home, the warranty, and outline various provisions regarding closing procedures and the buyer's obligations to apply for and obtain the requisite financing and approval to complete the purchase of the home. The Purchase Agreements do not confer any duties or obligations regarding the monthly property tax, escrow account, or monthly cost of the mortgage. Thus, as explained below, they cannot form the basis of a request to compel arbitration.

**1. Federal courts may only compel arbitration under the FAA if the underlying claims "arise out of" the contract containing the arbitration clause.**

A court cannot compel arbitration under the FAA if the FAA does not apply.[9] *See Rittman v. Amazon.com, Inc.*, 971 F.3d 904, 919-21 (9th Cir. 2020) (denying motion to compel arbitration agreement after finding that FAA did not apply); *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 201-02 (1956) (holding that if a contract is not subject to the FAA, the FAA provides no authority for a court to compel arbitration). And Section 2 of the FAA limits federal courts' authority to compel arbitration to only those disputes "arising out of" the parties' underlying contract or relating to the performance or breach of such contract. 9 U.S.C. § 2. *See also Tao v. Murphy*, 812 F. Supp. 3d 1117, 1122 (D. Nev. 2025) ("[T]he FAA does not apply to controversies that do not arise out of the contract containing the arbitration agreement."). As the Supreme Court has recognized, "to invoke its statutory powers under §§3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§1 and 2." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 112 (2019)*; see also Bernhardt*, 350 U.S. at 201("Sections 1, 2, and 3 are integral parts of a whole.").

As a sister court in this District recently observed, "Courts increasingly read Section 2's arising-out-of language and any nexus limitation to require a causal relationship between the arbitration-clause-containing contract and the dispute." *Tao*, 812 F. Supp. 3d at 1127. Those courts include a unanimous Second Circuit panel, a majority Eleventh Circuit panel, and a concurring justice on a Ninth Circuit panel, all of which agree that, per Section 2, the FAA only applies to claims arising from the contract in which the arbitration agreement appears. *See Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 119 (2d Cir. 2025) (holding that Section 2's arising-out-of language limits the FAA's scope to controversies that were caused by the contractual relationship); *Calderon v. Sixt Rent a Car, LLC*, 5 F.4th 1204, 1212 (11th Cir. 2021) (holding section 2 "governs an arbitration agreement only to the extent that it compels arbitration of 'controvers[ies]' that 'aris[e]

[9] D.R. Horton never explains whether it is moving to compel arbitration under the FAA or under Nevada or Florida law, instead citing both federal and state law seemingly arbitrarily. Under any of these frameworks, the Court must deny the Motion.

out of' the 'contract'")); *Revitch v. DIRECTV, LLC,* 977 F.3d 713, 721 (9th Cir. 2020) (O'Scannlain, J., concurring) ("[T]he FAA does not require the enforcement of an arbitration clause to settle a controversy that does not arise out of the contract or transaction" (emphasis omitted); *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023).

Moreover, this question does not turn on the scope of issues covered by the Arbitration provision. Rather, the FAA's limitation to only those claims that arise out of the contract containing the arbitration clause applies even if the arbitration agreement is purportedly all-encompassing. As the U.S. Supreme Court explained, "[t]he parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the [FAA] authorizes a court to stay litigation and send the parties to an arbitral forum." *New Prime,* 586 U.S. at 111. The Court instructed that, before ordering a case to arbitration, courts must still first consider whether the contract falls within 9 U.S.C. § 2, including whether the disputes arise out of the contract containing an arbitration clause. *See id*. If the dispute does not arise out of the contract, then the FAA does not authorize the court to compel arbitration, regardless of the breadth of the arbitration clause. *Id.; see Calderon*, 5 F.4th at 1212; *Tao,* 812 F. Supp. 3d at 1125.

**2. Plaintiffs' claims do not "arise out of" the Purchase Agreements under federal common law.**

The arbitration clauses that D.R. Horton cites as a basis for its Motion are contained in the Plaintiffs' Purchase Agreements with D.R. Horton. Mot., Exs. A, B, C, and D, and E, p. 8–9; Exs. E and F, pp. 7–8. But Plaintiffs' claims concern D.R. Horton and DHI Mortgage's scheme to manipulate the stated monthly payment in connection with mortgage financing—not the sale of the home itself—by using artificially low figures for property taxes when creating the escrow account. These claims do not "arise out of" the Purchase Agreements, which say nothing about the terms and amounts of Plaintiffs' mortgages. *See* Mot., Exs. A-F. *Cf. Revitch*, 977 F.3d at 722 (O'Scannlain, J., concurring) (collecting Ninth Circuit cases on the meaning of "arising out of," noting that "at a minimum, must exclude claims that are completely unrelated to the underlying contract or transaction"). *See also Tao,* 812 F. Supp. 3d at 1127 (observing that the mere creation of an account was insufficient to show a claim arose out of defendant's terms of service).

While the Supreme Court has not yet opined on the meaning of "arising out of" in section 2 of the FAA, in *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70 (1998), the Court narrowly construed the phrase when it had occasion to consider whether a claim arose out of a contract governed by federal common law. There, the Supreme Court found that an employment dispute arising under the American with Disabilities Act did not "arise out of" the underlying employment contract within the meaning of federal common law. *See id.* at 78-79. It reasoned that the claim could not have arisen out of the contract, as it was "distinct from any right conferred by the collective-bargaining agreement," notwithstanding the fact that the employer argued that the disabled worker "was not qualified for his position as the CBA requires" and the presumption of arbitrability. *Id. Cf. Calderon*, 5 F.4th at 1213 ("Although the cases we draw on here interpreted variations on the phrase "controvers[ies] . . . arising out of [the] contract" as they appeared in contracts themselves, we can think of no reason why the meaning of the phrase would be broader in the provision of the FAA that determines whether the statute governs such contracts.").

The holding in *Wright* is similar to those in the *Davitashvili, Calderon, Tao*, and the concurrence in *Revitch*. For example, in *Calderon*, the Eleventh Circuit refused to compel arbitration of claims concerning bogus fees charged by a rental car company, notwithstanding the plaintiff's agreement to an arbitration provision contained in a travel booking website's terms of use. The Eleventh Circuit held that the consumer claims related to the billing practices did not "aris[e] out of" the travel website's terms of use despite its purported application to "[a]ny disputes or claims relating in any way to… any services or products provided." *Calderon,* 5 F.4th at 1208-09. This was true even though the agreement to the terms of use was a necessary step in obtaining the rental car. And in *Tao*, the court looked to *Calderon* to reach a similar conclusion, agreeing with the Eleventh Circuit that "arising out of" means "'the dispute in question was an immediate foreseeable result of the performance of contractual duties.'" 812 F.Supp. 3d at 1127 (quoting *Calderon*, 5 F.4th at 1213).

Here, Plaintiffs' claims do not concern any foreseeable result caused by the performance of contractual duties contained in the Purchase Agreements. As in the aforementioned cases, the claims do not allege any violation of any term in the Purchase Agreements. While the Purchase Agreement

was ostensibly one of the documents provided to the Plaintiffs before closing, much like the terms of service in *Tao, Calderon*, and *Davitashvili*, the claims and the harms suffered as a result of the financing terms are not an "immediate" or "foreseeable" result of the performance of the Purchase Agreement. *See New Prime,* 586 U.S. at 111. Indeed, if this incidental connection were sufficient, then every future dispute about the home loan could be traced back to the arbitration clause in the initial Purchase Agreement, including claims involving the timing of mortgage payments or changes to the interest rates. And while D.R. Horton included myriad Extrinsic Documents to support its Motions to Dismiss, the Purchase Agreements were not among them, evidencing how unrelated they are to the claims.

Rather than arise out of the Purchase Agreements, the source of Plaintiffs' claims is rooted in the long-running conspiracy between D.R. Horton and DHI Mortgage to misrepresent the monthly payments on the home, by artificially suppressing the amount of property tax that would be owed, to make the cost of the mortgage loan appear more affordable. Their claims arise out of Defendants' coordinated and deceptive plan to (1) target budget-sensitive homebuyers; (2) obtain information on them as to their monthly budget and amount they could afford to pay each month for housing; (3) induce them to enter DHI Mortgage purchase-money loans for D.R. Horton homes, by assuring them that DHI Mortgage could provide financing that was consistent with that monthly budget; (4) use artificially low property tax estimates to make the monthly payments on the house appear to fit within the budget; (5) bury any true estimates in lengthy documents; and (5) reinforce the affordable nature of the monthly payments throughout the closing process, including in the Closing Disclosure forms. These claims do not turn on allegations that D.R. Horton has breached or violated any term in the obligations created by the Purchase Agreement and thus, do not "arise out of" it.[10]

Accordingly, the FAA does not apply, and the motion must be denied.

---

[10] Any dispute about terms contained *in* the Purchase Agreement, of course, would also not arise from that agreement—for the FAA to apply, the dispute must relate to *later performance* of duties or obligations (i.e., breaches) of the agreement. There is simply no dispute regarding a breach of any term, or even implied term, in the Purchase Agreements. *See Tao*, 812 F.Supp.3d at 1133. *Cf.* 9 U.S.C. § 2 (limiting scope to "a controversy *thereafter* arising out of such contract") (emphasis added).

**C. As a matter of contractual interpretation, Plaintiffs' claims against D.R. Horton do not fall with the scope of issues covered by the Arbitration provisions in the Purchase Agreements, and the Court therefore cannot compel arbitration under Florida and Nevada law.**

D.R. Horton's motion fails for a third independent reason: the dispute falls outside the scope of the issues covered by the Arbitration provision as a matter of Florida and Nevada contract law.

**1. The Florida Purchase Agreements call for the arbitration of claims relating to construction or warranties and do not reach the Florida Plaintiffs' claims.**

Under Florida law, the meaning of an arbitration provision is a "matter of contractual interpretation" and thus turns on the "intent of the parties to [the] contract, as manifested in the plain language of the arbitration provision and contract itself". *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). By its own terms, D.R. Horton's Florida Arbitration provision purports to cover only "disputes which may arise … regarding this agreement and/or the property," and provides as examples "(A) SELLER'S CONSTRUCTION AND DELIVERY OF THE HOME; (B) SELLER'S PERFORMANCE UNDER ANY PUNCH LIST TO INSPECTION AGREEMENT; AND (C) SELLER'S WARRANTY." Mot., Exs. E and F, pp. 7–8. None of these categories could possibly be construed to include claims about the calculation of the monthly mortgage payment for a mortgage originated by an entity that is not a party to the sales contract. *Cf. Chevron U.S.A. v. Echazabal*, 536 U.S. 73, 80 (2002) (observing that under the canon of construction, *expressio unius*, meaning "the expression of one thing is the exclusion of the other," when a contract lists specific items, there is an intentional exclusion of any items not mentioned within).

Moreover, scope-limiting language such as "regarding this agreement," like the FAA's "arising out of" language, requires more than the attenuated but-for relationship that exists here between Plaintiffs' claims and the Purchase Agreement. Specifically, courts hold that tort claims like those brought by Plaintiffs do not "'aris[e] out of or relat[e] to' an agreement" unless the claims "raise some issue the resolution of which ***requires*** reference to or construction of some portion of the contract itself." *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 637-638 (Fla. 1999) (collecting cases) (emphasis added).

For instance, in *Jackson v. Shakespeare Foundation*, the Florida Supreme Court held that a fraud claim about a seller's failure to disclose defects in real property was within the scope of the

arbitration provision because the fraud claim was "inextricably intertwined with both the circumstances that surrounded the transaction from which the contract emanated and the contract itself". 108 So. 3d 587, 593, 595 (Fla. 2013). In contrast, claims regarding duties independent of the underlying contract would not be subject to the arbitration clause:

> A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. . . More specifically, a claim has a nexus to a contract and arises from the terms of the contract ***if it emanates from an inimitable duty created by the parties' unique contractual relationship***. . . . In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, ***such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public***.

*Id.* at 593 (emphases added).

In the instant case, D.R. Horton failed to show that the Florida Plaintiffs' claims meet the nexus requirement set forth in *Jackson* and *Seifert* because their claims do not emanate from "an inimitable duty created by the parties' unique contractual relationship." *Jackson*, 108 So. 3d at 593. Instead, Plaintiffs' claims center on D.R. Horton's independent duties sounding in tort and in statute—in other words, duties "owed not only to the contracting parties but also to third parties and the public." *Id.* at 593. Accordingly, if Florida law applies, then D.R. Horton's motion should be denied.

**2. The Nevada Purchase Agreements call for the arbitration of claims relating to construction or warranties and do not reach the Nevada Plaintiffs' claims.**

Like in Florida, determining the scope of an arbitration provision under Nevada law is a matter of contract interpretation. *Clark Cnty. Pub. Emps. Ass'n v. Pearson,* 106 Nev. 587, 590, 798 P.2d 136, 137 (1990). D.R. Horton's Nevada arbitration clause is limited to disputes "***concerning, relating to, or arising out of this Purchase Agreement or the Property***." Mot., Exs. B, C, D, and E, p. 8–9 (emphasis added). For the reasons discussed above, the language "concerning, relating to, or arising out of" cannot be construed to cover the Nevada Plaintiffs' claims regarding their mortgage financing, which has only an attenuated connection to their Purchase Agreements.

Likewise, given the subject matter of the Nevada Purchase Agreements—which do not set criteria for the Nevada Plaintiffs' mortgages, incorporate by reference any of their mortgage terms, or even include DHI Mortgage as a party—the reference to "the Property" can mean only that the arbitration provision applies to disputes regarding the home itself (e.g., construction defects) and cannot be construed to apply to Plaintiffs' separate efforts to obtain ***financing*** for their homes. *See State ex rel. Masto v. Second Jud. Dist. Court ex rel. Cnty, of Washoe*, 125 Nev. 37, 44–45, 199 P.3d 828, 832–33 (2009) (holding that "[i]n interpreting a contract, [this court] construe[s] a contract that is clear on its face from the written language, and it should be enforced as written"); *Truck Ins. Exch. v. Palmer J. Swanson, Inc.,* 124 Nev. 629, 634, 189 P.3d 656, 660 (2008) (arbitration clauses "must not be so broadly construed as to encompass claims and parties that were not intended by the original contract" (quoting *Mikohn Gaming Corp. v. McCrea*, 120 Nev. 248, 252, 89 P.3d 36, 39 (2004)).

Consistent with this authority, this Court has held that claims against a home renovation contractor for violations of the Nevada Deceptive Trade Practices Act were not encompassed in the scope of the arbitration clause contained in the underlying contract, which was limited to those claims "arising as to" that contract. *Maddox v. Adler*, No. 2:23-CV-00535-RFB-NJK, 2024 WL 4349481, at *7 (D. Nev. Sept. 29, 2024) (Boulware, J.), *appeal dismissed*, No. 24-6153, 2025 WL 1037520 (9th Cir. Jan. 31, 2025). This Court reasoned that, as made clear by the statute, consumer fraud "is not an action upon any contract underlying the original transaction," such that the claims necessarily did not "arise as to" that contract—and are not encompassed in the stated scope of the arbitration clause. *Id.* (quoting NRS 41.600(4)). So, too, here, where Nevada Plaintiffs also bring an action under the NDTPA, as well as other claims arising in fraud. Thus, under Nevada law, the arbitration clause may not be enforced.

### D. The Truth-in-Lending Act prohibits mandatory arbitration of claims arising out of a mortgage-lending transaction.

Even putting aside the waiver and scope issues detailed above, the Court should deny D.R. Horton's motion because construing the Arbitration provisions here as encompassing disputes relating to Plaintiffs' loan arrangements would render the Arbitration provisions unenforceable

under federal law. Specifically, the federal Truth in Lending Act ("TILA") expressly prohibits mandatory arbitration of claims related to home mortgage transactions. First, it prohibits contractual "terms which require arbitration … as the method for resolving any controversy or settling any claims arising out of the [residential mortgage loan] transaction." 15 U.S.C. § 1639c(e)(1). Second, TILA mandates that there be "no other agreement between the consumer and the creditor relating to the residential mortgage loan . . . [that] shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States . . . in connection with . . . any other Federal law." *See also* 15 U.S.C. § 1639c(e)(3). Congress enacted these provisions in response to the 2008 financial crisis. *See Lyons v. PNC Bank, N.A.*, 26 F.4th 180, 185 (4th Cir. 2022). Interpreting the Arbitration provisions here to require arbitration of Plaintiffs' claims would violate these provisions.

Section 1639c(e)(3) bars enforcement of the Arbitration provisions in this context. As the Fourth Circuit has explained, "The plain language of § 1639c(e)(3) is clear and unambiguous: a consumer cannot be prevented from bringing a [federal] action in federal district court by a provision in an agreement 'relate[d] to' a residential mortgage loan . . . ." *Lyons*, 26 F.4th at 186 (citing 15 U.S.C. § 1639c(e)(3)). In *Lyons*, the court found that a banking depository account agreement was "related to" the mortgage loan such that the statutory prohibition on arbitration to applied, because that account agreement allowed set-off for mortgage loan debts. *Id.* at 186-87; *see also Lyons v. PNC Bank, N.A.*, No. 1:20-CV-02234-SAG, 2021 WL 50918, at *2-5 (D. Md. Jan. 6, 2021) (decision below, providing extensive reasoning affirmed by the Fourth Circuit). Similarly, courts have held that payment-processing agreements between a third-party payment processor and a homeowner are not permitted to require arbitration of disputes relating to the processing of mortgage payments, because that activity is "related to" mortgage loans. *See Thomas-Lawson v. Carrington Mortg. Servs., LLC*, No. 2:20-CV-07301-ODW (EX), 2021 WL 1253578, at *2-3 (C.D. Cal. Apr. 5, 2021). Courts have also noted the TILA prohibition when refusing to enforce arbitration requested by a home seller pursuant to the sales contract, when the plaintiffs' claims against the seller relate to the mortgage loan, not the sales contract, such that TILA would prohibit arbitration. *See Webb v.*

*CMH Homes, Inc.*, No. CV 3:20-0214, 2021 WL 1169899, at *5 (S.D.W. Va. Mar. 26, 2021), *aff'd*, No. 21-1473, 2022 WL 3572768 (4th Cir. Aug. 19, 2022).[11]

Here, D.R. Horton's Purchase Agreements (which contain the arbitration provisions) are not related to Plaintiffs' claims—instead, Plaintiffs' claims center on their mortgage financing with DHI Mortgage, as facilitated by D.R. Horton. As described above, Plaintiffs' claims are not arbitrable for this very reason. But in any event, Section 1639c(e)(3)'s prohibition means that the Court cannot construe the Purchase Agreements' arbitration provisions so broadly as to reach disputes regarding Plaintiffs' mortgage-related claims. Doing so would transform the Purchase Agreement's arbitration provision into exactly what Section 1639c(e)(3) forbids: an agreement "relating to the residential mortgage loan."

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant D.R. Horton's motion in its entirety.

/ / /

/ / /

/ / /

[11] After noting that TILA prohibits arbitration in this context, the *Webb* court explained:

> Plaintiffs maintain that all their interactions with Defendants were directed at getting them to enter into financing with Vanderbilt, which included the various representations and misrepresentations about the mobile home and goods and services they were being sold. In other words, Plaintiffs claim the lynchpin of the entire transaction relates to the credit transaction. Without doubt, the loan document was secured by the mobile home and is not arbitrable. Although Defendants argue the Sales Contract must be evaluated separately, the Court does not read Plaintiffs' Amended Complaint as making claims that directly arise under the Sales Contract apart from the loan agreement. Instead, Plaintiffs' claims appear to arise from the financing arrangement. Therefore, as it is the financing agreement that is the driving force underlying Plaintiffs' claims, the Court finds they are not arbitrable.

*Id.* In affirming the district court, the Fourth Circuit agreed that "[t]he claims arising out of the loan agreement are based in part on the theory that Defendants duped Plaintiffs into financing the purchase of a defective product"; as a result the claims were "pertaining to the loan agreement" and therefore not arbitrable. No. 21-1473, 2022 WL 3572768 (4th Cir. Aug. 19, 2022).

Dated: September 25, 2026

Respectfully Submitted,

/s/ Kristen G. Simplicio
**CLARKSON LAW FIRM, P.C.**
Kristen G. Simplicio (*pro hac vice*)
*ksimplicio@clarksonlawfirm.com*
1050 Connecticut Ave. NW, Suite 500
Washington, DC 20036
Tel.: (202) 998-2299
Fax: (213) 788-4070

**CLARKSON LAW FIRM, P.C.**
Roke Iko (*pro hac vice*)
*riko@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

**LEGAL AID CENTER OF SOUTHERN NEVADA**
Elizabeth Mikesell, Esq. (NV Bar No. 8034)
*EMikesell@lacsn.org*
Peter Aldous, Esq. (NV Bar No. 11346)
*paldous@lacsn.org*
725 E. Charleston Blvd.
Las Vegas, NV 89104
Tel.: (702) 386-1533

**VARNELL AND WARWICK PA**
Jeffrey L. Newsome II (*pro hac vice*)
*jnewsome@vandlwlaw.com*
Janet R. Varnell (*pro hac vice*)
*jvarnell@vandlwlaw.com*
Brian Warwick (*pro hac vice*)
*bwarwick@vandwlaw.com*
400 N. Ashley Drive, Suite 1900
Tampa, FL 33602
Tel.: 352-753-8600
Fax: 352-504-3301

**NATIONAL CONSUMER LAW CENTER**
Jennifer Spieler Wagner (*pro hac vice*)
*jwagner@nclc.org*
Shennan Kavanagh (*pro hac vice*)
*skavanagh@nclc.org*
7 Winthrop Square, 4th Floor
Boston, MA 02110
Tel.: 617-542-8010

*Attorneys for Plaintiffs and the Putative Class*