Mitchel H. Kider
*pro hac vice*
Timothy P. Ofak
*pro hac vice*
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036-1609
Tel: (202) 628-2000
kider@thewbkfirm.com
ofak@thewbkfirm.com

Sharon A. Bauman
NV Bar No. 8274
PLANTE HUGUENIN LEBOVIC KAHN LLP
8345 West Sunset Road, Suite 160
Las Vegas, NV 89113
Tel: (702) 470-0220
sbauman@phlklaw.com

*Attorneys for Defendants D.R. Horton, Inc. and DHI Mortgage Company, Ltd.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

KIM ROBINSON, BRADLEY SKOUGARD, DESIREE SKOUGARD, TAMMY SANTORII, ARTHUR WHITNEY, MICHELLE HINDS, BRADLEY HINDS, RUSTY STEFFNER, AMIE STEFFNER, and GAGE RADTKE, on behalf of themselves, and on behalf of all others similarly situated,

Plaintiffs,

vs.

D.R. HORTON, INC. and DHI MORTGAGE COMPANY, LTD.,

Defendants.

Case No: 2:25-cv-02394-RFB-NJK

**DEFENDANT D.R. HORTON INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO STAY THE CASE AS TO DEFENDANT D.R. HORTON**

**(ORAL ARGUMENT REQUESTED)**

The Court should compel arbitration of Plaintiffs' claims against D.R. Horton because the broad arbitration provisions in their Home Purchase Agreements govern and the Federal Arbitration Act ("FAA") and analogous Nevada and Florida statutes reflect a strong policy preference for enforcing arbitration agreements as written.

Plaintiffs' Opposition to D.R. Horton's Motion to Compel Arbitration is not persuasive because it contradicts Plaintiffs' own allegations in the First Amended Complaint ("FAC"); misreads the language of the arbitration provisions in their Home Purchase Agreements; and relies on inapposite case law. At the outset, Plaintiffs make the baseless claim that enforcement of the arbitration provisions in their Home Purchase Agreements would somehow provide D.R. Horton with "a get-out-of-jail-free card." Opp. at 1. Far from it, Plaintiffs will have a full and fair opportunity to pursue their claims against D.R. Horton in the arbitral forum, to which they all agreed in their Home Purchase Agreements.

Plaintiffs also argue that D.R. Horton waived its right to enforce the arbitration provisions in their Home Purchase Agreements because D.R. Horton has filed a motion to dismiss and litigation has been ongoing for nine months. But this argument ignores that the Court has yet to render a ruling on the merits and that the Parties have yet to engage in any discovery. Nor does any case law support Plaintiffs' position.

Further, Plaintiffs' Opposition tries to rewrite the FAC by asserting that D.R. Horton was intimately involved in their mortgage transactions. But Plaintiffs ignore their own prior characterization of the FAC's central claim against D.R. Horton—that its salespeople made purportedly fraudulent assurances in connection with Plaintiffs' home purchases. Because Plaintiffs' claims against D.R. Horton relate to their home purchases, these claims comfortably fall within the expansive language of the arbitration provisions in their Home Purchase Agreements.

Finally, Plaintiffs erroneously contend that a provision in the Truth-in-Lending Act ("TILA") prohibiting a mandatory arbitration clause in a residential mortgage loan agreement extends to a separate home purchase agreement simply because the underlying home purchase is financed through a mortgage loan. No court has gone this far, and Plaintiffs do not show that Congress intended for TILA to produce such a result.

## I. D.R. Horton Has Not Waived the Right to Compel Arbitration Because the Case Remains at the Pleading Stage

D.R. Horton has not waived the right to compel arbitration because the case has not proceeded past the pleading stage, the parties have not engaged in any discovery, and the Court has not otherwise rendered any significant ruling. Plaintiffs suggest that some sort of hard-and-fast rule exists that a party has waived the right to compel arbitration if the case has been ongoing for nine months or if the party has moved to dismiss on the merits. No such rule exists.

The party opposing arbitration (here, Plaintiffs) bears the burden of showing waiver of the right to compel arbitration. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–15 (9th Cir. 2023). To carry this burden, Plaintiffs must show that D.R. Horton "indicate[d] a conscious decision ... to seek judicial judgment on the merits of the arbitrable claims, which would be inconsistent with a right to arbitrate." *Id.* at 1015 (alteration in original and quotations omitted). A party "acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.* (quotations omitted). D.R. Horton's conduct indicates no such conscious decision.

That D.R. Horton moved to compel arbitration around nine months after Plaintiffs filed the original complaint does not inherently imply that D.R. Horton actively litigated the merits of the case "for a prolonged period of time." *Id.* at 1015; *Fox v. Experian Info. Sols., Inc.*, 718 F. Supp. 3d 1231, 1240 (E.D. Cal. 2024) (holding that party did not waive right to arbitrate even though the case was pending eleven months); *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 923–25 (S.D. Cal. 2021) (same for case pending eighteen months).

Regardless of the timing, nothing has occurred in court for D.R. Horton to take advantage of.[1] The case has not proceeded past the motion to dismiss phase. The Court has not rendered any other significant decision, such as class certification. The Court has yet to issue a scheduling order

[1] Plaintiffs observe that D.R. Horton did not expressly state that it would move to compel arbitration in the alternative dispute resolution ("ADR") section of the Parties' Rule 26(f) report. But this section addressed ADR only insofar as it related to the Parties' determination "that early resolution [was not] possible at [that] juncture." Dkt. 34 at 10. In other words, the Parties did not mutually agree to use ADR to try to settle the claims at the outset.

or a discovery plan. *See* Dkts. 35, 50. And the Parties have not engaged in any discovery. *See, e.g.*, *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 921 (N.D. Cal. 2024) (citing fact that the parties had not engaged in discovery as an indication that the party seeking arbitration had not waived the right to arbitration); *Wheeler v. LG Elecs. USA, Inc.*, No. 22-459, 2024 WL 51353, at *7 (E.D. Cal. Jan. 4, 2024) (same). Plaintiffs' response that Defendants' Motion to Stay Discovery shows an intention to waive the right to arbitration is backward. Opp. at 5, 7. D.R. Horton filed that motion to prevent further litigation activity.

Finally, D.R. Horton's filing of a motion to dismiss does not necessarily represent an intentional decision not to seek arbitration. The Federal Rules of Civil Procedure prescribe strict deadlines within which a party must answer a complaint or file a Rule 12(b) motion. Failure to timely submit either of these filings can carry serious consequences, such as default. But no federal rule or scheduling order set a specific deadline within which to move to compel arbitration.

Plaintiffs' reliance on *Uhl v. Roblox Corporation*, No. 25-5057, 2026 WL 2607799 (9th Cir. Sep. 3, 2026), is misplaced because, unlike here, the party seeking arbitration there moved to compel only after the court did not dismiss the case. In *Uhl*, the defendant moved to dismiss with prejudice and "only when the court declined—holding only that [the plaintiff] needed to amend his complaint to allege his claims with greater particularity—did [the defendant] change course and move to compel arbitration." *Id.* at *2. As the court explained, "a party cannot ask the district court to dismiss a complaint on the merits, [while] holding in reserve a claimed right to arbitrate that will be exercised only if it does not like the district court's decision." *Id.* at *3. D.R. Horton has attempted no such gamesmanship. Further, the court in *Uhl* reasoned that the defendant's decision to remove the case to federal court and efforts to defeat a motion to remand showed a conscious decision to remain in a judicial forum. *Id.* at *2. D.R. Horton has taken no such action.

Plaintiffs' other case law is not comparable because, unlike D.R. Horton, the parties seeking arbitration there engaged in more substantial litigation activity beyond the pleading stage. *FBC Mortgage, LLC v. Skarg*, 699 F. Supp. 3d 837, 842 (N.D. Cal. 2023), is inapposite because the party seeking arbitration there had opposed a motion for temporary restraining order and filed evidentiary objections to attached declarations. The court also expressly stated that an eight-month

delay was "not dispositive." *Id.* *Messina v. North Central Distributing, Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016), is similarly inapposite because the party seeking arbitration there "'substantially invoke[d] the litigation machinery' by removing the case to federal court, filing an answer, participating in a pretrial hearing, filing a scheduling report which recommended a trial date and discovery deadlines, and filing a motion to transfer venue." (Internal citation omitted).

In *Banq, Inc. v. Purcell*, No. 23-15229, 2024 WL 4164126, at *2 (9th Cir. Sep. 12, 2024), the party seeking to compel arbitration "chose to participate in ... discovery proceedings" by submitting "a discovery plan and scheduling order, a stipulated protective order, and a stipulation regarding documents and electronically stored information." *Banq* also recognized that "five months [would] not typically constitute 'a prolonged delay.'" *Id.* And unlike D.R. Horton, the party seeking arbitration in *Gile v. Dolgen California, LLC*, No. 21-56311, 2022 WL 17248087, at *1 (9th Cir. Nov. 28, 2022), waited eleven months and "met and conferred with plaintiffs' counsel six times prior to filing additional motions to dismiss ... and stipulated five times to plaintiffs filing amended complaints over the course of many months." D.R. Horton's conduct reflects no conscious decision to take advantage of the federal forum by engaging in discovery.

## II. The Court Must Compel Arbitration Because Plaintiffs' Claims Fall Within the Scopes of Their Home Purchase Agreements

Regardless of the breadth of the FAC's allegations, Plaintiffs' claims against D.R. Horton fundamentally address its purported conduct as a home seller and therefore fall within the scopes of their Home Purchase Agreements. As a start, Plaintiffs confuse the relevant legal standards. Under the FAA, a court must compel arbitration if: (1) a valid agreement to arbitrate exists; and (2) the issue sought to be arbitrated falls within the scope of that agreement. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). Similar rules apply under Nevada and Florida law. *See* Nev. Rev. Stat. Ann. § 38.219(1); Fla. Stat. Ann. § 682.02(1). Thus, as explained below, the Court must compel arbitration under both federal and state law.

Pursuant to "the FAA, the interpretation of an arbitration agreement is generally a matter of state law." *United States ex rel. Welch v. My Left Foot Childs.' Therapy, LLC*, 871 F.3d 791, 796 (9th Cir. 2017) (quotations omitted). But when applying state law, "the FAA imposes certain rules of fundamental importance that must also guide" a court's interpretation, including "that

questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* at 796 (quotations omitted). "If the text is plain and unambiguous, that is the end of [the court's] analysis ... because [the court] must rigorously enforce arbitration agreements according to their terms under both the FAA and Nevada law." *Id.* (quotations omitted); *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (holding same under Florida law).

Plaintiffs do not challenge the validity of their arbitration agreements, so the only issue is whether Plaintiffs' claims fall within the scopes of the arbitration provisions in their Home Purchase Agreements. *See* Opp. at 9–11. Plaintiffs assert that their "claims concern D.R. Horton and DHI Mortgage's scheme to manipulate the stated monthly payment in connection with mortgage financing—not the sale of the home itself." *Id.* at 11. But this assertion disregards the FAC's claims and expansive language of the governing arbitration provisions and misunderstands when a claim "aris[es] out of" a contract or transaction within the meaning of the FAA.

*A. <u>Plaintiffs' Claims Against D.R. Horton Relate to Their Home Purchase Transactions</u>*

Contrary to the FAC, Plaintiffs' Opposition now asserts that their claims against D.R. Horton arise solely out of their mortgage loan transactions with DHI Mortgage ("DHIM"). *See* Opp. at 1–2. According to this new theory, Plaintiffs' home purchases and associated Home Purchase Agreements are irrelevant to the FAC's claims against D.R. Horton. *See id.* Plaintiffs therefore argue that their claims cannot arise from their home purchases and the corresponding Home Purchase Agreements, which contain the operative arbitration provisions. The FAC tells a different story.

The FAC made no factual allegation plausibly linking D.R. Horton to the purportedly fraudulent mortgage disclosure forms. Plaintiffs' allegations as to D.R. Horton focus on their home purchases. *See, e.g.*, FAC, Dkt. 29 ¶¶ 4, 124, 152, 181, 212, 238, 264, 289; *see also* Dkt. 44 at 9 (arguing that allegedly misleading disclosures "deceived [Plaintiffs] into purchasing the homes"); *id.* at 19 (arguing that Defendants' purportedly fraudulent conduct included "sales pitches and budget assurances by DR Horton's agents"). Plaintiffs cannot now seriously suggest that their claims against D.R. Horton arise solely from their mortgage transactions with DHIM or that their home purchase transactions are a collateral issue.

### B. *Plaintiffs Disregard the Expansive Language of the Governing Arbitration Provision in the Nevada Home Purchase Agreement*

Plaintiffs disregard the expansive "relating to" language that defines the scope of the Nevada Home Purchase Agreement's arbitration provision. This arbitration provision applies to "any controversy, claim or dispute of any kind or nature between them arising between Buyer and Seller arising before or after the Closing concerning, **relating to**, or arising out of, this Purchase Agreement or the Property." Dkt. 51, Exs. A–D, at 11 (emphasis added). The Nevada Supreme Court has repeatedly held that, "[u]nder a broad arbitration provision—i.e., one that encompasses all disputes **related to** or arising out of an agreement—a presumption of arbitrability applies and only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."[2] *SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 788–99 (Nev. 2022) (emphasis added and quotations omitted); *Clark Cnty. Pub. Emps. Ass'n v. Pearson*, 798 P.2d 136, 138 (Nev. 1990); *Wellness Connection of Nev., LLC v. Ghanem*, 559 P.3d 1275 (Table) (Nev. Nov. 21, 2024).

Plaintiffs proffer no such "forceful evidence" that—when the Nevada Plaintiffs entered into their Home Purchase Agreements with D.R. Horton—the parties intended to exclude from arbitration claims like the FAC's. Their Opposition curiously assumes that the decision to finance and purchase a property does not relate to the associated purchase agreement or even the property itself. Contrary to this unsupported assumption, the FAC explicitly alleges that Plaintiffs would not have entered into these purchase agreements but for D.R. Horton's purportedly fraudulent conduct and that Plaintiffs' home purchases harmed them. FAC ¶¶ 123–24, 152, 181, 211–12.

Additionally, Plaintiffs artificially restrict the arbitration provision's reference to "the Property" to mean the literal structure of the building, *see* Opp. at 16, even though none of the Nevada Plaintiffs' Home Purchase Agreements describes "the Property" so narrowly, *see* Dkt. 51, Exs. A–D, at 2. Plaintiffs also baldly assert that—because these agreements "do not set criteria for the Nevada Plaintiffs' mortgages, incorporate by reference any of their mortgage terms, or even include DHI Mortgage as a party—the reference to 'the Property' ... cannot be construed to apply

[2] Plaintiffs' citation of *Maddox v. Adler*, No. 23-535, 2024 WL 4349481, at *7 (D. Nev. Sep. 29, 2024), is irrelevant because the arbitration provision there used narrower "arising as to" language, rather than the more expansive "relating to" language here.

to Plaintiffs' separate efforts to obtain financing for their homes." Opp. at 16 (emphases omitted). But this assertion requires reading the language "this Purchase Agreement or the Property" in violation of basic grammar principles to mean that the language on one side ("the Property") of the disjunctive conjunction "or" limits the language on the other side ("this Purchase Agreement"). *See Coast Hotels & Casinos, Inc. v. Nev. State Lab. Comm'n*, 34 P.3d 546, 550 (Nev. 2001) ("The word 'or' is typically used to connect phrases or clauses representing alternatives.").

Accordingly, the Nevada Plaintiffs' claims must be arbitrated under Nevada law because these claims fall within the scope of the Nevada Home Purchase Agreement's arbitration provision given that the claims relate to these agreements (as well as the underlying properties).

### *C. Plaintiffs Disregard the Expansive Language of the Governing Arbitration Provision in the Florida Home Purchase Agreement*

Plaintiffs similarly disregard the expansive "regarding" language that defines the scope of the Florida Home Purchase Agreement's arbitration provision. This arbitration provision applies to "ANY AND ALL DISPUTES WHICH MAY ARISE BETWEEN [THE PARTIES] **REGARDING** THIS AGREEMENT AND/OR THE PROPERTY." Dkt. 51, Exs. E at 6; F at 6–7 (emphasis added). The Florida Supreme Court has held that the use of language like "'relating to' broadens the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (citation omitted); *see Venn Therapeutics, LLC v. CAC Pharma Invs., LLC*, 382 So. 3d 6, 13–14 (Fla. Dist. Ct. App. 2024) (reading "concerning" as synonymous with "relating to" or "in regard to"). A claim has a "significant relationship" with a contract "if it emanates from an inimitable duty created by the parties' unique contractual relationship." *Jackson*, 108 So. 3d at 593.

Plaintiffs' claims that D.R. Horton's purportedly fraudulent conduct caused them to enter into allegedly harmful home purchases (i.e., claims "REGARDING [THE PURCHASE] AGREEMENT AND/OR THE PROPERTY," Dkt. 51, Exs. E at 6; F at 7) maintain a significant relationship to their Home Purchase Agreements. The FAC explicitly alleges that Plaintiffs would not have purchased these homes but for D.R. Horton's purportedly fraudulent conduct and that Plaintiffs' home purchases harmed them. FAC ¶¶ 237–38, 263–64.

Plaintiffs' Opposition misconstrues the language of the Florida Home Purchase Agreement to favor their artificially restrictive interpretation. Plaintiffs erroneously assume that the term "regarding" has the same meaning as the more restrictive "arising out of" language, rather than the more expansive "relating to" language. Contrary to this unsupported assumption, dictionaries define "regarding" to mean "relating to" or "concerning." *Regarding*, *Merriam–Webster Online Dictionary*, www.merriam-webster.com/simple/regarding (last visited Oct. 16, 2026); *Regarding*, *Dictionary.com*, www.dictionary.com/browse/regarding (last visited Oct. 16, 2026); *cf. Venn Therapeutics*, 382 So. 3d at 13–14 (reading "concerning" as synonymous with "relating to").

Plaintiffs also misapply the *expressio unius* canon to assert that the Florida Home Purchase Agreement's three examples of claims expressly subject to arbitration are exclusive by reading out the "INCLUDING BUT NOT LIMITED TO" language preceding these examples, Exs. E at 6; F at 7. The Florida Supreme Court has held that the *expressio unius* canon does not apply when the examples at issue are preceded by broadening language like "including." *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 781 (Fla. 2017) ("Generally, it is improper to apply expressio unius to a statute in which the Legislature used the word 'include.'"); *see Hurst Est. of Mathews v. Bell*, 436 So. 3d 1003, 1006 (Fla. Dist. Ct. App. 2026) (citing *White* to hold that "'including' is ordinarily a term of enlargement rather than limitation" in a contract).

Accordingly, the Florida Plaintiffs' claims must be arbitrated under Florida law because these claims fall within the scope of the Florida Home Purchase Agreement's arbitration provision given that the claims regard these agreements (as well as the underlying properties).

### D. *Plaintiffs Overread Case Law Addressing the FAA's Purported Causality Requirement*

In an attempt to escape the expansive language of the governing arbitration provisions, Plaintiffs overread an assortment of non-precedential case law to add an arbitrarily restrictive causation requirement to the FAA. As a threshold matter, the Court need not reach this issue because it can compel arbitration under Nevada and Florida law given that neither inserts such a causation requirement when the relevant contractual language does not provide for one. And the FAA does not preempt a less restrictive state law that permits arbitration in more cases. *See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478–79 (1989) (holding

"that the FAA pre-empts [only] state laws [that] require a judicial forum for the resolution of claims [that] the contracting parties agreed to resolve by arbitration." (Quotations omitted).).

Even if the Court reaches this issue, it should compel arbitration of Plaintiffs' claims under the FAA. Plaintiffs' allegations as to D.R. Horton focus on their home purchases, and the FAC made no factual allegation plausibly linking D.R. Horton to the purportedly fraudulent mortgage disclosure forms. Because Plaintiffs' claims against D.R. Horton arise out of their home purchase transactions and associated Home Purchase Agreements, these claims must be arbitrated under the FAA. *See Cox*, 533 F.3d at 1119 (requiring that the issue sought to be arbitrated fall within the scope of the agreement containing the arbitration clause).

Plaintiffs' Opposition harps on a district court's characterization that "[c]ourts increasingly read Section 2's arising-out-of language and any nexus limitation to require a causal relationship between the arbitration-clause-containing contract and the dispute." Opp. at 10 (quoting *Tao v. Murphy*, 812 F. Supp. 3d 1117, 1127 (D. Nev. 2025)). But even in the one Ninth Circuit concurrence cited, the judge explained that the Ninth Circuit has "held that 'arising from' is broad in scope—broader, even, than the term 'caused by.'" *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 722 (9th Cir. 2020) (O'Scannlain, J., concurring) (citation omitted). In the judge's view, "the language 'arising under the contract'" excludes only "matters or claims independent of the contract or collateral thereto." *Id.* For the reasons stated above, Plaintiffs' claims against D.R. Horton are not independent of, or collateral to, their Home Purchase Agreements.

In any event, Plaintiffs' claims by their own admissions possess a causal relationship to their Home Purchase Agreements. According to the FAC, Plaintiffs "would not have purchased [their homes] **but for** the fraudulent scheme" and therefore would not have "pa[id] inflated price[s] for their home[s, incurred] diminished home value[s], lost opportunit[ies] to purchase alternative homes within their budgets ..., and [experienced] other consequences." FAC ¶ 304 (emphasis added). The "but for" language quintessentially signifies a causal relationship. *See Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1183 (9th Cir. 2000) (explaining "but for" causation). In other words, the FAC alleges that D.R. Horton's purportedly fraudulent conduct caused Plaintiffs to purchase homes from D.R. Horton.

Accordingly, Plaintiffs' claims must be arbitrated under the FAA because their claims fall within the scopes of the arbitration provisions in their Home Purchase Agreements and arise out of these agreements as well as their home purchase transactions.

### III. TILA Does Not Preclude Arbitration of Claims Against a Homebuilder Related to a Home Purchase Transaction

TILA does not preclude arbitration of a claim against a homebuilder related to a home purchase transaction. As the parties asserting a statutory prohibition on arbitration of certain claims, Plaintiffs bear the burden of showing that, in enacting the relevant statute, Congress intended to waive judicial remedies as to those types of claims. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987) ("To defeat application of the [Federal] Arbitration Act in this case ..., the [plaintiffs] must demonstrate that Congress intended to make an exception to the [Federal] Arbitration Act ...."). And as relevant here, TILA provides: "No **residential mortgage loan** and no extension of credit under an **open end consumer credit** plan **secured by the principal dwelling** of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims **arising out of the transaction**." 15 U.S.C. § 1639c(e)(1) (emphasis added); 12 C.F.R. § 1026.36(h)(1).

By its plain text, section 1639c(e)(1) (the above TILA provision) precludes arbitration only as to disputes arising out of a residential mortgage loan or open-end consumer credit transaction.[3] Plaintiffs' Opposition makes no showing that Congress intended for this provision to encompass contemporaneous home purchase transactions. *See CMH Homes, Inc. v. Sexton*, 441 F. Supp. 3d 1202, 1209 (D.N.M. 2020) ("Had Congress intended to include in [TILA's arbitration] prohibition disputes arising from the contemporaneous purchase of the residence, it could have more clearly stated so."). Plaintiffs assert no factual allegation plausibly linking D.R. Horton to the purportedly fraudulent mortgage disclosure forms. And D.R. Horton's purported conduct in connection with Plaintiffs' home purchases does not arise out of their mortgage loan transactions with DHIM. Thus, section 1639c(e)(1)'s prohibition on mandatory arbitration clauses in residential mortgage loan agreements does not apply.

---

[3] The FAC does not allege that Plaintiffs received open-end consumer credit, so their argument could rest only on the "residential mortgage loan" language in section 1639c(e)(1).

Plaintiffs respond that courts have applied TILA's arbitration prohibition to claims against home sellers. In support, they cite *Webb v. CMH Homes, Inc.*, No. 20-214, 2021 WL 1169899 (S.D.W. Va. Mar. 26, 2021), *aff'd*, No. 21-1473, 2022 WL 3572768 (4th Cir. Aug. 19, 2022). But unlike the FAC's allegations, the plaintiffs in *Webb* alleged that the home seller was intimately involved in the financing transaction. There, the plaintiffs alleged that the home seller "conduct[ed] most aspects of the loan transaction." *Id.* at *3. They alleged that it was the home seller's salesperson "who provided them with the loan application, and that it was [this salesperson] who returned the signed loan application to [the lender]." *Id.* And when this salesperson "asked for the down payment, she [allegedly] said the check should be made out to [the home seller], even though [the lender] was ostensibly ... requesting the down payment." *Id.* Plaintiffs do not allege that D.R. Horton was involved in preparing the purportedly fraudulent mortgage disclosures or was in any other way involved in the mortgage origination process.

Nor does Plaintiffs' citation of *Lyons v. PNC Bank, N.A.*, 26 F.4th 180 (4th Cir. 2022), counsel otherwise. In *Lyons*, the defendant-bank sought to enforce an arbitration provision in an account agreement that the plaintiff signed when he opened two deposit accounts in connection with obtaining a home equity line of credit ("HELOC"). No. 20-2234, 2021 WL 50918, at *1 (D. Md. Jan. 6, 2021). The "Account Agreement included a set-off provision authorizing [the bank] to charge the deposit accounts for 'any loans, overdrafts, obligations, or other indebtedness ... now or hereafter owing to [it] by [the borrower] ....'" *Id.* (some alterations in original). Because "[t]erms that provide mechanisms for the payment of outstanding balances of the HELOC logically lie at the very heart of the credit transaction," the District of Maryland concluded that TILA's arbitration prohibition applied to the account agreement. *Id.* at *4.

Here, however, the Home Purchase Agreements are not so intertwined with the DHIM mortgage loan documents. For example, these purchase agreements do not reference any DHIM mortgage loan document. They clarify that various lenders exist who offer a variety of loan programs and that the homebuyer may use any lender of the homebuyer's choice. *See* Dkt. 51, Exs. A–D, at 5; E–F, at 1. And they even recognize that the homebuyer may purchase the home using cash and thus would have no need for mortgage financing.

Finally, the Nevada Home Purchase Agreement provides that "[t]he authority to determine whether claims, however characterized, are subject to this Agreement to Arbitrate shall rest with the arbitrator." Dkt. 51, Exs. A–C, at 11; D at 11–12. Thus, even the question of whether the Nevada Home Purchase Agreement's arbitration provision is unenforceable under TILA must itself be decided by the arbitrator, not the Court. *See Sitzman v. EK Real Est. Servs. of NY LLC*, No. 21-2666, 2022 WL 17853214, at *7–8 (N.D. Tex. Dec. 21, 2022); *Baskin v. EK Real Est. Servs., NY, LLC*, No. 421-727, 2022 WL 17742738, at *7 (E.D. Tex. Sep. 14, 2022).

Plaintiffs' reliance on *Thomas-Lawson v. Carrington Mortgage Services, LLC*, No. 20-7301, 2021 WL 1253578 (E.D. Cal. Apr. 5, 2021), does not alter this conclusion. There, the Eastern District of California concluded that TILA's arbitration prohibition applied to the arbitration clause in a payment processing agreement because the "mortgage payment transactions constitute[d] agreement[s] between the consumer[s] and the creditor relating to the residential mortgage loan[s]." *Id.* at *3 (alterations in original and quoting 15 U.S.C. § 1639c(e)(3)). But as in *Lyons*, the agreement at issue in *Thoms-Lawson* related to the mechanism by which the plaintiffs paid amounts owed on their mortgage loans. Here, however, Plaintiffs' Home Purchase Agreements relate to their home purchase transactions, which were distinct from their mortgage loan transactions.

In *Thomas-Lawson*, the Eastern District of California also relied on the Southern District of Florida's analysis of the same arbitration clause in *Attix v. Carrington Mortgage Services, LLC*, No. 20-22183, 2020 WL 5757624, at *9 (S.D. Fla. Sep. 16, 2020). The Eleventh Circuit, however, reversed the ruling in *Attix*. *See* 35 F.4th 1284, 1306, 1310 (11th Cir. 2022). Based on a comprehensive analysis of case law (including Supreme Court precedent), the Eleventh Circuit held that a court may consider only a "specific" challenge to the delegation clause itself. *Id.* at 1306. Plaintiffs advance no such specific challenge to the delegation clause in the Nevada Home Purchase Agreement.

## CONCLUSION

For these reasons, Plaintiffs' claims against D.R. Horton should be referred to arbitration, and the case against D.R. Horton should be stayed while the arbitration is pending.

Dated: October 16, 2026

*/s/ Timothy P. Ofak*
Mitchel H. Kider
*pro hac vice*
Timothy P. Ofak
*pro hac vice*
WEINER BRODSKY KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036-1609
Tel: (202) 628-2000
kider@thewbkfirm.com
ofak@thewbkfirm.com

Sharon A. Bauman
NV Bar No. 8274
PLANTE HUGUENIN LEBOVIC KAHN LLP
8345 West Sunset Road, Suite 160
Las Vegas, NV 89113
Tel: (702) 470-0220
sbauman@phlklaw.com

*Attorneys for Defendants D.R. Horton, Inc. and DHI Mortgage Company, Ltd.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on October 16, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Timothy P. Ofak*

Timothy P. Ofak